UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIFFANY M. BURDON,

      Plaintiff,

 v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security, [1]

      Defendant.

Case No. 3:12-cv-05937-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On July 3, 2009, plaintiff filed an application for disability insurance benefits alleging disability as of February 2, 2008, due to a bipolar disorder, depression, fibromyalgia and asthma. See ECF #10, Administrative Record ("AR") 17, 154. That application was denied upon initial

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**
ORDER - 1

administrative review on November 3, 2009, and on reconsideration on March 11, 2010.  <u>See</u> AR 17.  A hearing was held before an administrative law judge ("ALJ") on March 31, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  <u>See</u> AR 34-74.

In a decision dated May 11, 2011, the ALJ determined plaintiff to be not disabled.  <u>See</u> AR 17-29.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 29, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").  <u>See</u> AR 1; <u>see also</u> 20 C.F.R. § 404.981.  On October 30, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.  <u>See</u> ECF #3.  The administrative record was filed with the Court on January 28, 2013.  <u>See</u> ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings because the ALJ erred in evaluating both the medical and lay witness evidence in the record.  For the reasons set forth below, however, the Court disagrees that the ALJ so erred and thus that the ALJ erred in determining her to be disabled, and therefore finds defendant's decision to deny benefits should be affirmed.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination.  <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>see also</u> <u>Batson v. Commissioner of Social Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Carr v. Sullivan</u>, 772 F.Supp. 522, 525 (E.D.

ORDER - 2

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u> The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

ORDER - 4

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

  A. Dr. Tartalia

With respect to the medical opinion evidence in the record, the ALJ found in relevant part:

> On October 3, 2009, Clifford Tartalia, M.D., performed a consultative psychiatric evaluation and rated the claimant's Global Assessment of Functioning at 47.[3]  He thought the claimant could perform simple, repetitive tasks, but only under very selective low stress and demand [sic] work.  Dr. Tartalia opined that the claimant's ability to perform more detailed and complex tasks was moderately to severely impaired.  He opined that the claimant's ability to accept instructions from supervisors might be mildly impaired, but only on the condition that it was a low stress situation.  Dr. Tartalia reported the claimant's ability to interact with coworkers and the public appeared to be moderately impaired.  He concluded that the claimant's ability to perform work activities on a consistent basis without special or additional instructions appeared to be severely impaired at that time.  Dr.

---

[3] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

ORDER - 5

>Tartalia opined that the claimant's ability to maintain regular attendance in the workplace appeared to be moderately to severely impaired. He thought it was unlikely that the claimant could complete a normal workday or workweek without interruptions due to her mental health problems. Dr. Tartalia opined that the claimant's ability to deal with the usual stressors encountered in a competitive work situation was markedly impaired at that time (Exhibit 2F).
>
>I assign less weight to Dr. Tartalia's opinion, which was primarily based on the claimant's subjective complaints and presentation in the context of a disability. On mental status examination the claimant's immediate and recent memory recall was 3/3, she did serial 7's promptly without difficulty, spelled "world" forward and backward, had no difficulty with abstract thinking, and her judgment seemed intact. [Non-examining, consultative psychiatrist,] Dr. [Steven] Haney observed that Dr. Tartalia's opinion regarding the claimant's abilities to perform work activities on a consistent basis without special or additional instructions and to maintain regular attendance in the workplace was not supported by objective findings. Dr. Tartalia reported the claimant had no hobbies. However, the claimant enjoys making beaded jewelry, sewing, and playing video games (Exhibit 14Fp17). I note that on December 11, 2009, the claimant's affect was appropriate and her mood was euthymic. [Treating physician] Dr. [Gail] Shuler assessed her mood as stable (Exhibit 8Fp5). This was only a couple months after the evaluation with Dr. Tartalia. Dr. Shuler assessed the claimant as stable in March 2010, which was the month her insured status expired (Exhibit 13Fp15).

AR 27. Plaintiff argues the ALJ's above reasons for rejecting Dr. Tartalia's opinion are not legally sufficient. The undersigned disagrees.

First, while it is true that Dr. Tartalia's opinion contains his own observations of plaintiff as well as the results of mental status testing he performed, as the ALJ pointed out those clinical findings fail to support the severity of limitation Dr. Tartalia assessed. See AR 247-52. As such, it was not unreasonable for the ALJ to surmise that this level of severity was based largely on what plaintiff reported during the evaluation, and thus properly rejected Dr. Tartalia's opinion in part on that basis given the ALJ's unchallenged determination that plaintiff was less than fully credible concerning her subjective complaints. See Morgan, 169 F.3d at 601 (physician's opinion premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted); see also Tonapetyan, 242

ORDER - 6

F.3d at 1149; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if it is inadequately supported by clinical findings).

Second, although inconsistency between what Dr. Tartalia wrote concerning the lack of hobbies and other evidence in the record showing plaintiff elsewhere reported enjoying hobby-related activities by itself would not be sufficient to reject Dr. Tartalia's opinion, it does indicate that plaintiff may not have been completely forthright with Dr. Tartalia on other matters as well, such as the severity of the symptoms and limitations she was experiencing.  This then provides additional support for the ALJ's rejection of Dr. Tartalia's opinion on the basis that Dr. Tartalia inappropriately relied on the unreliable self-reports of plaintiff.  The Court also finds irrelevant the fact that Dr. Tartalia mentioned plaintiff engaged in no hobbies in the same sentence that he mentioned her lack of any real social life or other recreational activities or interests, as it is clear plaintiff told Dr. Tartalia that she did not have any hobbies, regardless of the context in which that was noted. See ECF #13, p. 8; AR 249.

Lastly, plaintiff asserts the ALJ gave improper deference to the opinion of Dr. Haney, as he "did not have access to information that gave [him] greater insight into [her] functioning than Dr. Tartalia." ECF #13, p. 7.  But for the opinion of a non-examining psychiatrist to constitute substantial evidence, it need only be supported by other independent evidence in the record. See Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149.  That is, there is no requirement that Dr. Haney necessarily have *greater* insight into plaintiff's ability to function than Dr. Tartalia. Rather Dr. Haney's functional assessment merely must be supported by other objective medical evidence in the record, not just his own opinion of Dr. Tartalia's report.  Here, Dr. Haney did not merely review the opinion of Dr. Tartalia, he reviewed other objective medical evidence in the record as well. See AR 262.  Given that as noted by the ALJ, Dr. Tartalia's own clinical findings

ORDER - 7

do not support the severity of limitations he assessed – and that, as plaintiff herself points out, Dr. Tartalia based his opinion primarily on his evaluation of plaintiff – the ALJ did not err in assigning "significant weight" to Dr. Haney's functional assessment because it had more support in the record overall. AR 26-27.

B.      Dr. Heilbrunn

Plaintiff also challenges the ALJ's following findings concerning the medical opinion evidence in the record:

> . . . [O]n November 2, 2009, State agency medical consultant Dale Thuline, M.D., opined that the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently. He opined that the claimant could stand and/or walk for six hours and sit for about six hours in an eight-hour workday with normal breaks. Dr. Thuline opine that the claimant had no limitations pushing and/or pulling at this exertional level. Dr. Thuline opined that the claimant could frequently balance. He opined that the claimant could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. Dr. Thuline opined that the claimant should not climb ladders, ropes or scaffolds. He opined that the claimant should avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. Dr. Thuline opined that the claimant had no manipulative, visual or communicative limitations (Exhibit 6F). On February 25, 2010, State agency medical consultant Robert Hoskins, M.D., affirmed Dr. Thuline's assessment (Exhibit 9F). I assign significant weight to the opinions of Dr. Thuline and Dr. Hoskins. Although they did not examine the claimant, they are experts in evaluating the medical issues in disability claims before the Social Security Administration and their opinions are consistent with the longitudinal record.
>
> On October 7, 2009, Dr. Heilbrunn opined that the claimant could sit for at least 10 minutes uninterrupted for a total of six hours. He thought the claimant could stand or walk for at least 20 minutes uninterrupted for six out of eight hours. Dr. Heilbrunn reported the claimant was able to lift/carry a maximum of five pounds with either hand on a frequent basis as measured by the examination. He opined that the claimant could reach above or below shoulder level bilaterally and had full use of her hands for handling, feeling, fingering and grasping. Dr. Heilbrunn opined that the claimant could work at heights, around heavy machinery, extremes of temperature, chemicals, dust, fumes, gases or excessive noise. He opined that the claimant had no limitations traveling (Exhibit 3F). I assign less weight to the opinion of Dr. Heilbrunn. His functional assessment is highly subjective and inconsistent with his own objective findings and the claimant's daily activities. Notably,

ORDER - 8

> Dr. Heilbrunn reported the claimant had normal strength in the upper extremities and examination of her hands was normal. Elsewhere, the claimant reported she could lift 20 to 25 pounds (Exhibit 5Ep7). Dr. Thuline opined that Dr. Heilbrunn's findings did not support limiting the claimant to lifting/carrying a maximum of five pounds with either hand (Exhibit 6Fp7). Dr. Heilbrunn opined that the claimant had no environmental workplace limitations.

AR 26. As she did in regard to the ALJ's rejection of Dr. Tartalia's opinion, plaintiff argues Dr. Heilbrunn based his functional assessment on the results of his examination of her, and not just on her subjective complaints, and therefore the ALJ erred in rejecting Dr. Heilbrunn's opinion on that basis. Again, the Court disagrees. It is true that Dr. Heilbrunn provided objective clinical findings. As noted by the ALJ, however, those findings were largely inconsistent with the severity of limitation Dr. Heilbrunn assessed. See AR 256-59. Indeed, given that those findings were for the most part unremarkable (see id.), here too the ALJ was not unreasonable in therefore presuming Dr. Heilbrunn largely relied on plaintiff's own self-reporting (see AR 255-56).

Plaintiff argues the ALJ also erred in relying on the opinion of Drs. Thuline and Hoskins, because, unlike that provided by Dr. Heilbrunn, their opinion is "more likely to be based on their subjective interpretation of the available evidence and not on other independent evidence in the record." ECF #13, p. 10. There is no indication in the record, however, that such is the case here. Indeed, as explained above, the opposite appears to be true in this case, given that despite having obtained largely unremarkable clinical findings, Dr. Heilbrunn went on to assess limitations that are out of proportion thereto. Lastly, it is true in regard to the inconsistency the ALJ noted between plaintiff's reported ability to lift and that assessed by Dr. Heilbrunn, that Dr. Heilbrunn opined as to her ability to lift on a frequent basis while plaintiff did not specifically do so. See AR 178. Still, Dr. Heilbrunn limited her to no more than five pounds, and did not at all give any indication that he believed she could lift at the 20 to 25 pound range plaintiff had reported. See

ORDER - 9

AR 259. As such, the ALJ was not remiss in using this as an additional basis for discounting Dr. Heilbrunn's functional assessment.[4]

II. <u>The ALJ's Evaluation of the Lay Witness Evidence in the Record</u>

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. <u>Id.</u> at 512. The ALJ also may "draw inferences logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.

The record contains written questionnaires from plaintiff's mother and one of her friends, in which they set forth their observations of plaintiff's mental and physical symptoms and limitations. <u>See</u> AR 204-10, 212-17. With respect to those statements, the ALJ found in relevant part:

> I . . . assign less weight to the lay witness questionnaire completed by Mussetta Enos, the claimant's mother (Exhibit 11Ep1). She reported the claimant had pains in the back, large joints, muscles and wrist pain. Ms. Enos stated that the claimant had bad headaches. However, treatment records show few headache and musculoskeletal complaints during the relevant period. On January 19, 2011, the claimant reported she had not had a headache in a long time (Exhibit 13Fp7). Ms. Enos reported the claimant often dropped and fumbled things and had tremors in her hands. Again, examination of the claimant's hands was entirely normal (Exhibit 3F).
>
> I assign less weight to the lay witness questionnaire completed by Tracy Tasso, a friend of the claimant's family (Exhibit 12E). She reported the

---

[4] <u>See Morgan</u>, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 754 (9th Cir. 1989) (finding ALJ properly rejected physician's opinion in part on basis that it conflicted with plaintiff's subjective pain complaints).

ORDER - 10

>claimant had panic attacks that could last hours.  However, the claimant testified that her panic attacks lasted from a couple minutes to 60 minutes maximum.  Ms. Tasso stated that the claimant was sometimes unable to go grocery shopping due to back and hip pain.  The claimant has no degenerative back or hip condition and treatment records show few complaints of fibromyalgia type pain during the relevant period.

AR 27.  Plaintiff argues the ALJ erred in so finding, because the observations of both of these lay witnesses are consistent with the opinion of Dr. Heilbrunn.  Even if this is the case, however, as discussed above the ALJ did not err in rejecting Dr. Heilbrunn's opinion on the basis that it was not consistent with his own objective clinical findings.  As such, both lay witness statements lack objective clinical support in the record as well.

The Court also rejects plaintiff's contention that the ALJ erred in rejecting the lay witness statements on the basis of their inconsistency with such clinical support.  An ALJ may discount lay testimony if it conflicts with the medical evidence.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence).  Plaintiff cites Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009), for the proposition that the ALJ may not reject lay witness evidence merely because it is not supported by the medical evidence in the record.

It is true that in Bruce the Ninth Circuit held it was improper for the ALJ to discredit testimony of claimant's wife as not supported by medical evidence in record.  See Bruce, 557 F.3d at 1116.  In so holding, the Ninth Circuit relied on its prior decision in Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996), which held that the ALJ improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms, because in so doing the ALJ violated the Commissioner's directive "to consider the

ORDER - 11

testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." Bruce, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original). The Court of Appeals, however, did not address its earlier decisions in Bayliss, Lewis and Vincent, in which, as discussed above, it expressly held that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Lewis, 236 F.3d at 511 (citing Vincent, 739 F.2d at 1995); see also Bayliss, 427 F.3d at 1218.

Accordingly, although Bruce is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of Bayliss, Lewis or Vincent was made in that case, and that none of the holdings in those earlier decisions concerning this issue were expressly reversed, it is not at all clear whether discounting lay witness evidence on the basis that it lacks objective medical evidentiary support is no longer allowed. The Court also agrees with the reasoning employed by United States Magistrate Judge Mary Alice Theiler to distinguish Bruce:

> As asserted by [defendant], the Ninth Circuit's decision in *Bruce* can be distinguished. In that case, the Court rejected as improper the ALJ's reasoning that the lay testimony was "not supported by the objective medical evidence." 557 F.3d at 1116. The ALJ in *Bruce* did not point to any specific evidence, contradictory or otherwise, in support of this conclusion. Instead, the ALJ *appeared to discount in general the value of lay testimony in comparison to objective medical evidence*. *Smolen*, cited in *Bruce*, can be similarly distinguished. In that case, the Court noted that the claimant's disability was based on fatigue and pain, that the medical records were "sparse" and did not "provide adequate documentation of those symptoms[,]" and that . . . the ALJ was consequently required to consider the lay testimony as to those symptoms. 80 F.3d at 1288-89. The ALJ in *Smolen*, therefore, had erred in rejecting the lay testimony because " 'medical records, including chart notes made at the time, are far more reliable and entitled to more weight than recent recollections made by family members and others, made with a view toward helping their sibling in pending litigation.' " *Id.* at 1289. As in *Bruce*, the ALJ *essentially rejected the value of lay testimony as compared to objective medical evidence*.

Staley v. Astrue, 2010 WL 3230818 * (W.D. Wash. 2010) (emphasis added). Likewise, here the ALJ rejected the lay witness statements because of their inconsistency with the objective medical

ORDER - 12

evidence discussed herein, and <u>not</u> because the ALJ found in general that the evidentiary value of such statements is less than that provided by the objective medical evidence.

The Court does agree with plaintiff though that the ALJ erred in not giving any reasons for rejecting the observations provided by the lay witnesses concerning plaintiff's mental health symptoms and limitations.  Defendant argues that because plaintiff has not challenged the ALJ's determination that plaintiff herself lacked credibility concerning her subjective complaints, and because the lay witness observations are similar to those complaints, the lay witness observations may be rejected for the same reasons used to discount plaintiff's complaints. <u>See</u> ECF #14, p. 11 (citing <u>Molina v. Astrue</u>, 674 F.3d 1104, 1114 (9th Cir. 2012); <u>Valentine v. Commissioner Social Security Administration</u>, 574 F.3d 685 (9th Cir. 2009).

In both <u>Valentine</u> and <u>Molina</u>, however, the ALJ at the very least mentioned the lay witness testimony in the record being rejected, even though germane reasons may not have been expressly provided for rejecting it. <u>See</u> 674 F.3d at 1114; 574 F.3d at 694.  Here, though, except for the discrepancy between plaintiff's self-reporting regarding the length of her panic attacks and that reported by her mother, the ALJ made no mention of those portions of the lay witness questionnaires dealing with plaintiff's mental symptoms and limitations.[5]  Indeed, to allow rejection of lay witness testimony without any mention thereof would run afoul of the Ninth Circuit's clear pronouncement that lay witness testimony "is competent evidence that an ALJ *must* take into account," unless the ALJ "*expressly* determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001) (emphasis added).  This the ALJ did not do, and thus he erred.

---

[5] In addition, while the discrepancy in the reporting of panic attacks noted by the ALJ may be sufficient to discount that one aspect of plaintiff's mother's testimony, again there is no indication the ALJ considered the other aspects of her mother's testimony concerning her mental health symptoms and limitations.

ORDER - 13

That being said, the undersigned agrees with defendant that the ALJ's error in failing to mention or discuss the lay witness evidence in this case was harmless.[6] In Molina, the Ninth Circuit held that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." 674 F.3d at 1117. In that case, the Court of Appeals found that "[a]lthough the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as [the claimant's] own testimony, and the ALJ's reasons for rejecting [that] testimony appl[ied] with equal force to the lay testimony."[7] Id. at 1122.

Here, the observations of the two lay witnesses in the record are substantially similar to plaintiff's subjective complaints concerning her mental health symptoms and limitations. See AR 48-49, 57-58, 61-62, 154, 174, 177-80, 198, 204, 206-07, 212, 214-16. Given that as discussed above plaintiff has not challenged the ALJ's determination that she is not fully credible regarding her subjective complaints, and that at least some of those reasons – such as plaintiff's failure to pursue greater treatment for her allegedly disabling mental health symptoms and inconsistencies

---

[6] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

[7] The Court rejects plaintiff's contention that the Ninth Circuit in Molina was merely following the process it laid out in Stout for determining harmlessness, but merely "collapsed the steps." ECF #15, p. 7. It is true that in Molina, the Ninth Circuit stated: "Although we have expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, we have adhered to the general principle that an ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." 674 F.3d at 1115. As just discussed, however, the Ninth Circuit expressly went on to hold that while the ALJ did err in not giving germane reasons for rejecting the lay witness testimony, "such error was harmless given that the lay testimony describe[d] the same limitations as [the claimant's] own testimony, and the ALJ's reasons for rejecting [that] testimony appl[ied] with equal force to the lay testimony." Id. at 1122. Given that the Ninth Circuit found it to be appropriate to find harmless error on this basis, the Court shall do so here as well given the facts of this case support such a finding.

ORDER - 14

between her subjective complaints and the objective medical evidence in the record[8] – apply with equal force to the lay witness evidence. Accordingly, the ALJ did not commit any harmful error in rejecting that evidence here.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 4th day of October, 2013.

Karen L. Strombom
United States Magistrate Judge

---

[8] See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment, and noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription of physician for conservative treatment only to be suggestive of lower level of pain and functional limitation); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony.").

ORDER - 15